## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **No. 20-CR-233 (VLB)** |
| | : | |
| **RONDELL CHAMBERS,** | : | |
| **Defendant** | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |

## DECISION DENYING DEFENDANT'S MOTION TO SUPPRESS TANGIBLE EVIDENCE [DKT. 54]

Before the Court is a motion to suppress filed by the Defendant, Rondell Chambers. [Dkt. 54]. Mr. Chambers seeks to suppress evidence seized during his arrest, relying on his Memorandum of Law in support of his motion. *Id*. The Defendant filed neither an affidavit or a declaration in further support of his motion. *Id*. The Government filed an opposition [Dkt. 59] and the Defendant filed a reply to the Government's Opposition [Dkt. 69]. For the following reasons, the Court DENIES the motion to suppress. Of record are the Hartford Police Department Incident Report and three (3) body-camera video recordings of Defendant's arrest. [Dkt. 56 (Def. Ex. A, Police Report), Dkt. 61 (Notice of Manual Filing of Three Video Files)].

## RELEVANT BACKGROUND

On November 23, 2020, a federal grand jury returned an indictment against the Defendant charging him with one count of possession of a firearm and

1

ammunition by a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). [Dkt. 1 (Indictment)]. The Defendant was arrested on December 30, 2020 and released from custody on May 5, 2021 on a $150,000 appearance bond. [Dkt. 26 (Order Setting Conditions of Release)].

The Court recounts the following facts from the Hartford Police Department Incident Report, body worn camera footage, and the facts set forth in the parties' memoranda of law. [Dkts. 54, 56, 59, 61, and 69].[1]

On October 17, 2020, Hartford Police Detective Robert Fogg received information that the Defendant, who was wanted on two active arrest warrants, was a passenger in a 2003 Honda Accord, Connecticut Registration AY69529. [Dkt. 56 at 1]. Mr. Chambers was also a suspect in a shooting in New Britain. [Dkt. 59 at 3].[2]

Detective Fogg set up a surveillance team to follow the Honda. The team observed the Honda travelling south on Main Street towards Maple Avenue before parking along the curb on the west side of the street in the vicinity of 455 Maple Avenue. [Dkt. 56 at 2]. Hartford Police Officers Barron and Spencer pulled in front of the Honda in an unmarked police vehicle and activated the vehicle's emergency lights. The officers were wearing vests with "POLICE" written on the front and back. [*Id.*]

Detective Fogg parked directly behind the Honda and observed Officers Barron and Spencer exit their vehicle. He also observed the Defendant exit the Honda from the front passenger seat. [Dkt. 56 at 2]. The Defendant was wearing a red Nike bag which he "quickly removed and dropped on the pavement, directly

---

[1] The Government acknowledges that the parties agree on the facts. *See* [Dkt. 59 at FN 1].
[2] The Defendant was arrested on charges related to this shooting in December 2020. [Dkt. 59 at 3]

behind the Honda." [*Id.*] Detective Fogg recovered the bag. He "felt that the bag was weighted and appeared to contain an item consistent with the weight of a firearm." [*Id.*] The bag contained a handgun, a small bag containing marijuana, and a pair of gloves. [*Id.*]

The body worn camera video labelled Axon Body 2 X81324360 (hereinafter "BWC A"), shows the officer in the passenger seat approached the Defendant standing on the curb behind the Honda. BWC A at 2:10:14. There is a red object on the pavement behind the car, close to the rear passenger side taillight. *Id.* As the officer approached, the Defendant walked towards him. The officer placed his hands on the Defendant and guided him to lean against the car, then placed him in handcuffs. *Id.* at 2:10:15-28.

The body worn camera video labelled Axon Body 2 X81323909 (hereinafter "BWC B") shows the officer in the driver's seat of the unmarked vehicle. He got out of his vehicle and escorted the female driver to the back of the Honda. In the background, Detective Fogg picked up the bag and opened it. BWC B at 2:10:43-47.

The Defendant told the officers at the scene that he "didn't throw no bag" and that he "didn't drop shit." BWC B at 2:12:17-26. Detective Fogg interviewed the Defendant at the precinct after advising him of his Miranda Rights. [Dkt. 56 at 5]. He denied that he discarded the bag and then became uncooperative before asking for a lawyer. [*Id.*]. The female was also interviewed, and she confirmed that the Defendant was in possession of a red bag while riding in her vehicle however she

was not aware of its contents. [*Id.*]. The Defendant was arrested on charges stemming from the arrest warrants as well as state firearms charges. [*Id.* at 1,6].

## DISCUSSION

The Defendant challenges the validity of the search and seizure of his red bag. He argues that the warrantless search and seizure of the bag violated the Fourth Amendment because it did not fall under an exception to the Fourth Amendment's warrant requirement. The Government argues that the Fourth Amendment does not apply because the Defendant abandoned the bag, and even if the Fourth Amendment did apply, the search and seizure falls within an exception to the warrant requirement, and the firearm would have inevitably been discovered pursuant to a valid inventory search. The Court agrees that the Defendant abandoned the bag but will also address the Defendant's challenge under the Fourth Amendment.

### I.  Abandonment

The Fourth Amendment shields individuals against intrusions that violate a reasonable expectation of privacy. *Katz v. United States*, 389 U.S. 347, 350 (1967). However, "the Fourth Amendment protects people not places," so "when a person voluntarily abandons property…he forfeits any reasonable expectation of privacy that he might have had in the property." *Id.* at 351; *United States v. Lee*, 916 F.2d 814, 818 (2d Cir. 1990). In determining whether property has been abandoned, the Court must focus on the defendant's intent, which "may be inferred from words spoken, acts done, and other objective facts." *Lee*, 916 F.2d at 818.

4

The Defendant's actions in this case show a clear intent to abandon the bag. The Defendant exited the front passenger seat of the Honda as an unmarked police vehicle with activated emergency lights approached him. When he got out of the car, he was wearing the red Nike bag. He removed the bag and walked to the back of the vehicle, in the opposite direction of the approaching police car and dropped the bag on the pavement on a public road. As a police officer approached him, the Defendant walked away from the bag, towards the officer. The Defendant does not attempt to conceal the bag or place it in a location where he would reasonably be able to recover it. *See Smith v. Ohio*, 494 U.S. 541, 543-44 (1990) (no abandonment where bag tossed onto car hood where goal was to shield it from police inspection).

The Defendant's statements also demonstrate that he did not intend to reclaim the bag. After his arrest, both at the scene and later at the precinct, the Defendant denied that he dropped a bag prior to his arrest. Though these post-arrest statements are not as persuasive as pre-seizure ownership disclaimers, the Defendant's words suggest that he did not intend to reclaim the bag after dropping it. *See e.g., Lee*, 916 F.2d at 818 (defendant abandoned his suitcase and forfeited any legitimate expectation of privacy in it by denying ownership).

The Defendant cites to the Supreme Court's decision in *California v. Hodari D.* to support his contention that abandonment does not apply because he only "dropped the bag after an unequivocal show of force by [police officers]." [Dkt. 69 at 10]. The Defendant reasons that, pursuant to the holding in *Hodari D.*, his actions did not constitute abandonment because he dropped the satchel only after he was seized by law enforcement. [*Id.* at 11]. In *Hodari D.*, the defendant, fleeing from law

5

enforcement, threw a rock of crack cocaine right before he was tackled and handcuffed. 499 U.S. 621, 623 (1991). The narrow question before the Supreme Court was "whether at the time he dropped the drugs, Hodari had been 'seized' within the meaning of the Fourth Amendment." *Id.*[3] The Court concluded that Hodari was not seized until he was tackled, therefore the abandoned cocaine was not the fruit of the seizure. *Id.* at 629. Contrary to the Defendant's interpretation, *Hodari D.'s* holding is limited to defining when a seizure has occurred and only contemplates exclusion of evidence that is the fruit of an unlawful seizure. In this case, the Defendant does not contest the lawfulness of his arrest, nor does he cite to any authority finding that abandonment cannot occur after a lawful seizure. Such an interpretation would be contrary to the exclusionary rule which promotes lawful police conduct while punishing unlawful actions.

However, even if abandonment could not occur after a lawful seizure, the Defendant was not seized at the time he dropped the satchel. "A seizure…requires '*either* physical force…*or*, where that is absent, *submission* to the assertion of [police] authority." *United States v. Huertas*, 864 F.3d 214, 216 (2d Cir. 2017) (quotations omitted). At the time the Defendant abandoned the bag, there was no showing of physical force. Therefore, the Defendant was seized only if he submitted to police authority. *Id.* "Whether conduct constitutes submission will depend…on the totality of the circumstances." *United States v. Baldwin*, 496 F.3d 215, 219 (2d Cir. 2007).

---

[3] The State conceded that the seizure, if the Court concluded one had occurred, violated the Fourth Amendment. *Id.*

The Defendant did not submit to police authority until after he dropped the satchel. Submission may constitute an inaction, for example in *Brendlin v. California*, the Supreme Court found that a passenger in a vehicle submitted to police authority by staying inside the vehicle once it came to a stop. 551 U.S. 249, 262 (2007) (holding that when a police officer makes a traffic stop, the passenger in a car is seized along with the driver). Here though, the Defendant did not stay inside the Honda when approached by a police car with flashing lights. He got out of the car and walked away from officers instead of staying in the car and waiting for further direction. Other circuits have found this kind of "ambiguous reaction at the outset of a police show of authority" does not amount to submission. *See United States v. Stover*, 808 F.3d 991 (4th Cir. 2015) (finding that defendant who exited his vehicle and dropped a gun in front of the vehicle after being approached by a police officer who told him to get back in the car did not submit to police authority).

> *United States v. Salazar*, 609 F.3d 1059, 1066-68 (10th Cir. 2010) (holding driver not seized when he backed away slowly from police vehicle before obeying trooper's command to get out of his truck); *United States v. Jones*, 562 F.3d 768, 772-75 (6th Cir. 2009) (holding that, although seizure of seated passengers occurred when police cars "block[ed] in" defendant's car, defendant himself was not seized because he immediately "'jumped out' as though he wanted to run"); *United States v. Johnson*, 212 F.3d 1313, 1316-17 (D.C. Cir. 2000) (holding that defendant sitting in parked car did not submit to police when he made "continued furtive gestures" including "shoving down" motions "suggestive of hiding (or retrieving) a gun").

*Id.* at 1000. The Defendant only submitted to the officer's authority after he dropped the bag, therefore he abandoned it before he was seized.

7

For these reasons, the Court finds that the Defendant abandoned the bag and is without any recourse under the Fourth Amendment.

II.     Exceptions to the Warrant Requirement

Even if the Defendant had not abandoned the bag, its search and seizure did not violate the Defendant's Fourth Amendment rights because it falls within an exception to the warrant requirement. The Court finds that the bag's seizure was justified both as a search incident to a lawful arrest and exigent circumstances, and the subsequent search falls under the plain touch doctrine.

a.   Search Incident to a Lawful Arrest

A search incident to a lawful arrest is an exception to the Fourth Amendment's warrant requirement. *See Arizona v. Gant*, 556 U.S. 332, 338 (2009). This exception allows a police officer to search "the arrestee's person and the area 'within his immediate control.'" *Chimel v. California*, 395 U.S. 752, 763 (1969). The purpose of this exception is to protect arresting officers and prevent the arrestee from concealing or destroying evidence from the offense. *Gant* at 339. The area within an arrestee's "immediate control" is defined as "the area from within which he might gain possession of a weapon or destructible evidence." *Chimel* at 763.

The Defendant argues that the search incident to arrest exception does not apply because he was compliant with law enforcement and handcuffed at the time the bag was seized. [Dkt. 54 at 15-16].  The Court disagrees. Detective Fogg picked up the bag mere feet from the defendant just after he was placed in handcuffs. Less than 30 seconds elapsed between the time the first officer approached the Defendant and when Detective Fogg recovered the bag. Though the Defendant was

8

restrained, handcuffs are not a fail-safe. *See United States v. Shakir*, 616 F.3d 315, 32-21 (3rd Cir. 2010) (citing *United States v. Sanders*, 994 F.2d 200, 209 (5th Cir. 1993) ("[B]y handcuffing a suspect, the police [do not] instantly and completely eliminate all risks that the suspect will flee or do them harm…[a]lbeit difficult, it is by no means impossible for a handcuffed person to obtain and use a weapon….within lunge reach….like any mechanical device, handcuffs can and do fail on occasion.").

Notably, Detective Fogg did not have to conduct a search to recover the bag. It was lying on the pavement on a public roadway where he observed Defendant drop it. The initial seizure was a limited Fourth Amendment intrusion necessary to protect officers at an active crime scene with two detainees.

  b.  Exigent Circumstances

The exigent circumstances exception to the warrant requirement applies when "the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *Kentucky v. King*, 563 U.S. 452, 460 (2011) (quoting *Mincey v. Arizona*, 437 U.S. 385, 394 (1978). This exception "calls for a case-specific inquiry that looks to the totality of the circumstances" to determine whether it was reasonable for law enforcement "to believe there was an urgent need for [the] warrantless conduct." *United States v. Delva*, 858 F.3d 135, 153 (2d Cir. 2017) (quotations omitted). Courts have found concerns about officer safety to be exigent circumstances that justify a warrantless search. *See e.g.*, *United States v. Jackson*, 778 F.2d 933, 937 (2d Cir. 1985).

Here, the Defendant had just dropped a bag on a public roadway while being approached by police officers who were arresting him on outstanding arrest warrants for serious criminal conduct. There were two detainees at the scene within reach of the bag. Based on the Defendant's conduct, it was reasonable for the officers to believe that the bag contained contraband, including dangerous objects such as the firearm that was eventually recovered or even an incendiary or other destructive device. As discussed in sub-section a, the initial seizure of the bag was a limited Fourth Amendment intrusion that was necessary to ensure the safety of the officers' present at the scene.

### c.  Plain Touch Doctrine

Once Detective Fogg removed the bag from the Defendant's reach, he felt that it contained an object consistent with the weight of a firearm. At that point, the plain touch doctrine permitted him to open the bag.

The plain touch doctrine is a corollary to the plain view doctrine permitting a warrantless seizure "if police are lawfully in a position from which they view an object, [and the object's] incriminating character is immediately apparent." *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993). "[The plain view doctrine] has an obvious application by analogy to cases in which an officer discovers contraband through the sense of touch during an otherwise lawful search." *Id.*

In this case, Detective Fogg was lawfully in possession of the bag after seizing it incident to the Defendant's arrest. *Supra* Sec. II. a. It was immediately apparent to Detective Fogg that, based on its weight and appearance, the bag likely contained a firearm. When the Defendant got out of the car after being confronted

10

by police, he removed the bag from his body and dropped it, suggesting that it contained something that he didn't want the police to find on his person. *See e.g., United States v. Hagood*, 2021 WL 2982026, at *16 (S.D.N.Y. July 15, 2021) (officer's observations of outline of firearm and defendant's actions indicative of flight justified the conclusion that the defendant's fanny pack contained a weapon); *United States v. Watson*, 2021 WL 535807, at *7 (S.D.N.Y. February 11, 2021) (finding that a "heavy object weighing down [the defendant's fanny pack] which resembled the outline of a firearm" was sufficient to justify a frisk of the fanny pack).

The Defendant argues that Detective Fogg's description is insufficient to justify a search. The Court disagrees and finds that Detective Fogg's description is similar to the officer in *Watson's* description of a "very hard object which [he] knew to be a firearm[.]" As a police officer, it is common knowledge that Detective Fogg is trained in the use of and routinely carries a firearm.  He would necessarily know how one feels.  It is axiomatic that, after picking it up, he had a reasonable suspicion that the bag contained a firearm.

For these reasons, the Court finds that even if the Fourth Amendment did apply, the search and seizure was lawful because it fell under an exception to the warrant requirement.

III.   Inventory Search

The Government argues that, even if Detective Fogg's conduct violated the Fourth Amendment, the firearm and marijuana are admissible under the inevitable discovery doctrine because they would been discovered during an inventory search of the Defendant's belongings.

When police detain suspects, they often perform inventory searches of any property recovered from the detainee to "protect an owner's property while it is in the custody of the police, to insure against claims of loss, stolen or vandalized property, and to guard the police from danger." *See Colorado v. Bertine*, 479 U.S. 367, 372 (1987). An inventory search is an "incidental administrative step" outside the purview of the Fourth Amendment. *Illinois v. Lafayette*, 462 U.S. 367, 372 (1987). Detective Foss observed Defendant exit the vehicle, walk to the back of the vehicle, and deposit the bag on the ground. From those observations, it was apparent the bag belonged to Defendant. Therefore, even if a Fourth Amendment violation had occurred, the evidence is admissible under the inevitable discovery doctrine if it would have been discovered during a valid inventory search of Defendant's property. *United States v. Mendez*, 315 F.3d 132, 137 (2d Cir. 2002).

In order to be valid, an inventory search must be conducted pursuant to "established inventory procedures." *United States v. Gorski*, 852 F.2d 692, 696 (2d Cir. 1988). The procedures do not need to be in writing, nor do they need to be exacting. *United States v. Thompson*, 29 F.3d 62, 65-66 (2d Cir. 1994); *United States v. Lopez*, 547 F.3d 364, 371 (2d Cir. 2008). "[L]aw enforcement officials may open closed containers as part of an inventory search so long as they act in good faith pursuant to standardized criteria…or established routine." *Mendez*, 315 at 137 (internal quotations omitted). "The existence of such a valid procedure may be proven by reference to either written rules and regulations or testimony regarding standard practices." *Id.* (citing *Thompson*, 29 F.3d at 65).

Here, the Government states that the officers adhered to the Hartford Police Department's unwritten "two-step process" for conducting inventory searches.

> First, officers seize any weapons (including pocket knives or other sharp objects), cigarettes, matches and the like at the scene of the arrest or prior to the booking process. Then, during the subsequent booking process, an arrestee is searched and any money or personal effects are logged for safekeeping. If a vehicle is involved in an arrest, depending on the circumstances, police will either leave the car locked on scene and safeguard the keys, drive the car back to the police station where the arrestee is being taken as a courtesy, or arrange to have the car towed.

[Dkt. 59 at p. 5]. The Government provides no authority for its representation that this is Hartford Police Department's standard procedure or practice. Logical though it may be, the Government's surmise is insufficient to uphold an inventory search.

Without an affidavit or hearing testimony from a Hartford police officer or official or a department manual or other publication disseminated to the force, there is no evidence on the record of the Hartford Police Department routine inventory collection and search practice or policy. In *United States v. Gorski*, the Second Circuit remanded the district court's finding that evidence was admissible pursuant to an inventory search when there was no evidence in the record that such searches were "an invariable, routine procedure in the booking and detention of a suspect." 852. F2d 692, 696 (2d Cir. 1988).

## EVIDENTIARY HEARING

"[A]n evidentiary hearing on a motion to suppress ordinarily is required if 'the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question. *United States v. Pena*, 961 F.2d 333, 339 (2d Cir. 1992)

(quoting *United States v. Licavoli*, 604 F.2d 613, 621 (9th Cir. 1979)). "[A] defendant seeking to suppress evidence bears the burden of demonstrating disputed issues of fact that would justify an evidentiary hearing." *United States v. Diaz*, 303 F.Supp. 2d 84, 93 (D. Conn 2004) (citing *United States v. Culotta*, 413 F.2d 1343, 1345 (2d Cir. 1969)). Further, a defendant seeking a hearing must submit "an affidavit of someone alleging personal knowledge of the relevant facts." *United States v. Barrios*, 210 F.3d 355, (2d Cir. 2000) (citing *United States v. Gillette*, 383 F.2d 843, 848 (2d Cir. 1967)).

Here, there are no contested  issues of fact that might justify an evidentiary hearing. The Defendant did not submit an affidavit challenging the Government's evidence. Therefore, the Defendant's request for an evidentiary hearing is denied.

Finally, because the factual question of whether the search was an inventory search is unnecessary because the Court has found the search valid on other grounds, no evidentiary hearing need be conducted based on the failure of both parties to present evidence supporting the conclusion that the search of the red bag which led to the discovery of the firearm was an inventory search.

## <u>CONCLUSION</u>

For the foregoing reasons, the Defendant's Motion to Suppress is DENIED.

IT IS SO ORDERED.

_____/s/_____

**Hon. Vanessa L. Bryant**
**United States District Judge**

**Dated at Hartford, Connecticut: February 15, 2022**